UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11412-RGS

UNITED STATES OF AMERICA

v.

JAMES P. STEWARD, PAMELA STEWARD,
HOLLY LANE ASSOC., LLC, and CITY OF BEVERLY

MEMORANDUM AND ORDER
ON UNITED STATES' MOTION TO DISMISS
DEFENDANT HOLLY LANE ASSOC., LLC'S COUNTERCLAIM

February 13, 2014

STEARNS, D.J.

This matter is before the court on plaintiff United States of America's motion to dismiss a counterclaim brought by defendant Holly Lane Associates, LLC (HLA), alleging a wrongful levy. The United States filed the original Complaint on June 12, 2013, looking to collect the assessed tax liabilities of defendants James and Pamela Steward. The United States sought: (1) a money judgment, pursuant to 26 U.S.C. § 7401, against the Stewards for delinquent taxes; and (2) the enforcement, under 26 U.S.C. § 7403(a), of associated federal tax liens against the Stewards, by a means of a judicial sale of real property located at 28 Holly Lane, Beverly, MA (The Property). HLA

is the owner of record of The Property and is also named as a defendant.[1]

HLA responded by filing a counterclaim against the United States, captioned "Complaint for Wrongful Levy (Enforcement of Tax Liens Against Real Property)," requesting both declaratory and injunctive relief.  The United States now moves to dismiss the counterclaim for, *inter alia*, lack of subject matter jurisdiction.[2]  While the United States acknowledges that HLA is not barred from raising the factual allegations set out in the counterclaim in the defense of the § 7403 action, it argues that a counterclaim is the wrong vehicle by which to deliver them.  The court agrees, as will be explained, although it emphasizes that in dismissing HLA's counterclaim, it is not entering a judgment on the merits of the dispute over The Property.

## STANDARD OF REVIEW

In the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  *Johansen v.*

---

[1] In accordance with 26 U.S.C. § 7403(b), all persons claiming an interest in a property that is the subject of a § 7403(a) lien enforcement action must be made parties to such an action.

[2] The United States also relies on the doctrine of res judicata based on this court's previous dismissal of a separate complaint brought by HLA against the United States making a similar claim of wrongful levy.

*United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995)).   While the plausible factual allegations in the complaint (or in this case, the counterclaim) are deemed to be true, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007), a party "may not rest merely on 'unsupported conclusions or interpretations of law.'" *Murphy*, 45 F.3d at 522 (quoting *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir.1993)).   "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss."  *Johansen*, 506 F.3d at 68.

## BACKGROUND

The underlying issue can be summarily stated: Is The Property subject to the federal tax liens arising out of James Steward's tax liabilities? Specifically, the United States alleges that: (1) James Steward owes in excess of $200,000 for "Trust Fund" taxes[3] that he failed to pay over to the United States in various quarters during 1999 and 2000; (2) James and Pamela Steward owe, jointly and severally, over $5,000 in delinquent income taxes for

---

[3] Trust Fund taxes are income and Federal Insurance Contribution Act (FICA) taxes that an employer withholds from employees' paychecks and keeps "in trust" for the United States until the amounts are paid over to the Internal Revenue Service (IRS).  *See* 26 U.S.C. § 6672.

the year 2010;[4] (3) James Steward holds an equity interest in The Property;[5] (4) HLA is James Steward's transferee and/or nominee;[2] and, (5) as such, the federal tax liens, which pursuant to 26 U.S.C. § 6321 attach to "all property and rights to property" of James Steward, extend to The Property.[7]  For its part,

---

[4] For present purposes, the allegations regarding the Stewards' tax liabilities are taken as undisputed facts.

[5] HLA admitted the following facts in its Answer to the Complaint brought by the United States:  In 1996, The Property was transferred to a trust named "28 Holly Lane Beverly Realty Trust," in which James and Pamela Steward held a 45% beneficial interest, and in which James Steward's father, Charles A. Steward, held the remaining 55%, with a promise to transfer Charles Steward's interest to James Steward upon the payment in full of a $160,000 note held by Beverly National Bank.  Charles Steward died in 2010, and, according to the terms of the trust instrument for the Charles A. Steward Trust referenced in his will, The Property was to be transferred to James P. Steward.  *See* Ans. ¶¶ 16-19.

[2] HLA neither admitted nor denied the following facts in its Answer: In 2011, Bank of America (BOA), as executor of the estate of Charles Steward, filed an action against James Steward and his family seeking to evict them from The Property.  James Steward objected, arguing that he had personally contributed money toward the purchase and maintenance of The Property. BOA and James Steward settled the eviction case, and stipulated that the fair market value of The Property was $555,000.  However, to reflect the contributions towards the maintenance of The Property claimed by James Steward, BOA agreed to sell The Property to Steward "or his designee" for $340,000.  BOA transferred title to The Property for the agreed price of $340,000 to HLA on December 23, 2011.  BOA's attorney also filed an affidavit in Probate and Family Court confirming BOA's intent to sell The Property at less than fair market value because "the buyer [had] established that he had equity in the property totaling over $200,000." *See* Ans. ¶¶ 20-24.

[7] Pursuant to 26 U.S.C. § 6322, the lien imposed by § 6321 arises at the time of assessment, which, in the case of Steward's Trust Fund liabilities, was

HLA denies that Steward has any interest in, or control over, The Property or HLA, and alleges that "[HLA] is a bonafide purchaser for value." Ans. ¶ 24.[8]

### The IRS Files Tax Lien Notices

On July 26, 2007, the IRS filed a Notice of Federal Tax Lien (NFTL) for $150,191.04 in unpaid taxes of James Steward, listing The Property as his residence. Countercl. ¶ 24. On November 8, 2011, the IRS filed an NFTL against both James and Pamela Steward for their delinquent 2010 income tax liabilities, again listing The Property as their residence. *Id.* ¶ 25. On January 5, 2012, a representative of BOA, as administrator of the estate of Charles A. Steward (James Steward's father), transferred The Property to HLA for $340,000. *Id.* ¶ 19. *See also* fn. 6, *supra*. On November 13, 2012, the IRS filed an NFTL for the unpaid taxes of James Steward, specifically naming HLA as the "transferee or nominee" of Steward, and listing The Property as HLA's

in June of 2003. *See* Compl. ¶ 7.

[8] The court notes that, for purposes of defeating a § 6321 federal tax lien (if such lien did indeed arise and attach), the statutory definition of "purchaser," as contained in 26 U.S.C. § 6323(h), controls the inquiry (as opposed to the common-law construct of a "bona fide purchaser for value"). *See* 26 U.S.C. § 6323(a) (listing classes of persons against whom the lien imposed by § 6321 is not valid in absence of notice). Thus, to prove that it was a "purchaser" for the purpose of defeating a lien imposed by § 6321, HLA must prove that "for adequate and full consideration in money or money's worth" it "acquire[d] an interest . . . valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).

residence.  *Id.* ¶ 29.

### *The IRS Sends HLA a Notice of Levy*

Prior to the filing of the November 2012 NFTL, the IRS sent HLA a Notice of Levy on July 2, 2012, which stated: "THIS IS NOT A BILL FOR TAXES YOU OWE.  THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE." The Notice listed James Steward as the taxpayer.  It instructed HLA as follows: "This levy requires you to turn over to us this person's property and rights to property (such as money, credits, and bank deposits) that you have or which you are already obligated to pay this person. . . . Make a reasonable effort to identify all property and rights to property belonging to this person. . . . *If you don't owe any money to the taxpayer, please complete the back of Part 3, and mail that part back to us in the enclosed envelope.*"  Def.'s Opp'n, Ex. U, Dkt. #21-3, at 40 (emphasis added).

On November 20, 2012, HLA sent a letter to the IRS (which it labeled as a "wrongful levy protest letter") explaining its interest in The Property.  HLA asserted that James Steward was never an owner of The Property, that he possessed only the right to purchase The Property at some undefined point, and that the IRS lien therefore did not attach to The Property.  HLA did not otherwise respond to the Notice.

## HLA Brings Wrongful Levy Suit

Though no enforcement action had been taken by the United States with respect to the levy notice, on April 1, 2013, HLA filed a Complaint against the United States alleging a wrongful levy under 26 U.S.C. § 7426.  *See* Case No. 13-10743-RGS.[9]  HLA sought damages, declaratory relief, and injunctive relief. Subsequently, on June 12, 2013, the United States filed the instant case, designating it as related to HLA's wrongful levy Complaint.  On July 3, 2013, the United States moved to dismiss HLA's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[10]  Noting that it had elected to pursue its claims against The Property through judicial rather than administrative means, the United States represented that "the IRS is willing

---

[9] HLA averred that "[d]efendant IRS cannot levy against [The Property] because the IRS liens recorded against the property were invalid because the delinquent taxpayer Defendant James P. Steward did not hold an ownership interest in the property at the time the liens were recorded."  *Id.*, Dkt. #1, ¶ 34.

[10] The United States also moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The United States noted that the only relief requested by HLA permitted by 26 U.S.C. § 7426 was injunctive relief, and then only on a showing that "a levy or sale would irreparably injure rights in property." 26 U.S.C. § 7426(b)(1).  The July 2, 2012 Notice of Levy, however, sought only personal property belonging to or owed to the Stewards, and if HLA possessed no such property, monetary or otherwise, as it contends, obligated it only to return part 3 of the Notice stating as much.

to withdraw the levy."[11] *Id.*, Dkt. #16, at 10.

On August 2, 2013, the court held a hearing on the motion to dismiss HLA's Complaint. During the course of the hearing, HLA agreed to a dismissal without prejudice to its right to defend the instant action. The court consequently allowed the motion to dismiss, noting "[t]he government wins its motion to dismiss, but they're also withdrawing the levy." *Id.*, Dkt. #22, at 6.

## The Counterclaim

On September 3, 2013, HLA filed its answer to the instant Complaint, denying that James Steward has an interest in The Property or in HLA. It also asserted the counterclaim, which for all practical purposes is identical to the dismissed wrongful levy complaint, except for identifying the Complaint brought by the United States as the "levy" for which it is seeking redress under § 7426. Countercl. ¶ 4.

## DISCUSSION

An action cannot lie against the United States without the authorization and consent of Congress, and, absent an "express Congressional waiver of immunity or consent to be sued," no court has jurisdiction to hear such an

---

[11] For whatever reason, the IRS has yet to withdraw the levy.

action.  *Murphy*, 45 F.3d at 522.  *See also F.D.I.C. v. Meyer,* 510 U.S. 472, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.");  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (noting that there is no jurisdiction "[i]n the absence of clear congressional consent");  *Callahan v. United States*, 426 F.3d 444, 450 (1st Cir. 2005) (quoting *Skwira v. United States,* 344 F.3d 64, 72 (1st Cir. 2003)) ("It is 'elementary' that the United States, as sovereign, is immune from suit unless it has consented to be sued.").  Moreover, in passing the Anti-Injunction Act, 26 U.S.C. § 7421, Congress explicitly prohibited suits "to restrain assessment or collection" of taxes, with certain limited exceptions listed in § 7421(a).

In response to the invocation by the United States of the doctrine of sovereign immunity, HLA argues that in enacting 26 U.S.C. § 7426, "Congress provided Holly Lane with a right of action against the IRS," and that a federal district court has "equitable jurisdiction to determine Holly Lane's superior rights and issue an injunction prohibiting the IRS from forcing a judicial sale of Holly Lane's property."  Def.'s Opp'n, Dkt. #21, at 6.  The statute HLA cites, § 7426(a)(1), is one of the enumerated exceptions to the Anti-Injunction Act. Otherwise known as the "wrongful levy" statute, § 7426(a)(1), provides that

"[i]f a levy has been made on property or property has been sold pursuant to a levy," any third party with an interest in that property who claims that the property was "wrongfully levied upon" may bring an action against the United States.  *Id.*  It is evident from the language of the statute that the exception applies only when a levy "has been made."

A levy is one of the "two principle tools" – the other being the lien foreclosure suit – that the Internal Revenue Code provides to the IRS to collect unpaid taxes via "[a]ffirmative action" against a delinquent taxpayer's property and rights to property.  *United States  v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-720 (1985).[12]  The levy power is authorized by 26 U.S.C. § 6331, which allows the Secretary to collect the taxes of a delinquent taxpayer "by levy upon all property and rights to property . . . belonging to such person," and to "seize and sell such property or rights to property (whether real or personal, tangible or intangible)."  *Id.* § 6331(a) & (b).

The fatal flaw in HLA's argument stems from a false factual premise.  Contrary to HLA's assertion,  The Property HLA seeks to "protect" has never been the subject of an IRS levy.  The July 2, 2012 Notice of Levy sent to HLA

---

[12] A federal tax lien "is not self-executing" and therefore "[a]ffirmative action by the IRS is required to enforce collection of the unpaid taxes." *Id.* at 720.

was not, on its face, directed to real property, and the IRS took no subsequent action to forcibly "seize" or to "sell" The Property pursuant to that Notice. HLA attempts to evade the inevitable by insisting that its counterclaim is not based on the July 2, 2012 levy, but rather is "based on the IRS's June 12, 2013 complaint" brought under § 7403.   Def.'s Opp'n, Dkt. #21, at 5.

Relying on a dictionary web site (Dictionary.com), HLA argues that "forced judicial sale is a wrongful levy," *id.*, and that the § 7426 waiver of sovereign immunity applies here because "the IRS is seeking to seize and sell Holly Lane's property in this case." Countercl. ¶ 4.  This is simply not the case. A lien foreclosure action is not a levy.  As previously noted, a levy and a lien foreclosure are distinct actions that can be taken by the IRS to collect taxes, and each action is authorized by a separate section of the Internal Revenue Code (§ 6331 and § 7403).  A levy is a "provisional remedy" that "protect[s] the Government against diversion or loss" by allowing the IRS to administratively seize property prior to a determination that "the Government's rights to the seized property are superior to those of other claimants." *Nat'l Bank of Commerce*, 472 U.S. at 721.  A levy "does not determine the rights of third parties until *after* the levy is made, in postseizure administrative or judicial hearings." *Id.* at 731 (emphasis in original).  In contrast, a § 7403 action is a "plenary action" where a court *first* adjudicates the interests in the property

11

and "finally determine[s] the merits of all claims to and liens upon the property." *Id.* at 737.   Only then is property turned over to the United States (should it prevail).  A § 7403 action "adequately protects any vested rights of third parties in the property at issue." *Stabler v. United States,* 786 F. Supp. 2d 1161, 1165 (E.D. La. 2011).  In essence, a lien foreclosure action adjudicates the very same thing that a wrongful levy suit would – except that it is brought by the United States to affirmatively determine interests before any seizure or sale of property.

Thus, the bringing of a § 7403 lien enforcement action for judicial sale cannot serve as the "levy action" which is a condition precedent to jurisdiction under § 7426.   As there is no waiver of sovereign immunity that permits a suit against the United States for bringing an allegedly improper § 7403 proceeding, the counterclaim must be dismissed for lack of subject matter jurisdiction.

ORDER

For the foregoing reasons, the United States' motion to dismiss HLA's counterclaim is <u>ALLOWED</u>.

SO ORDERED

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

12